Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

*Attorneys for Defendants David Weddell
and Communication Unites Everyone, Inc.*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| DISH NETWORK L.L.C. and SLING TV LLC, <br><br> Plaintiff(s), <br><br> vs. <br><br> DAVID WEDDELL, COMMUNICATION UNITES EVERYONE, INC., and DOES 1-10, <br><br> Defendants. | Case No.: 2:26-cv-01623-GMN-EJY <br><br> **DEFENDANTS DAVID WEDDELL AND COMMUNICATION UNITES EVERYONE, INC.'S EMERGENCY MOTION TO VACATE TEMPORARY RESTRAINING ORDER** |

Defendants David Weddell and Communication Unites Everyone, Inc. ("CUE") (collectively, "Defendants"), move this Court to urgently and immediately vacate the Temporary Restraining Order entered on June 22, 2026 (ECF No. 3) and extended on July 7, 2026 (ECF No. 17). The TRO is an overbroad, unconstitutional prior restraint that has shut down Defendants' business, despite Plaintiffs only identifying a problem with 23 out of 1,000 channels on the Defendant's platform. This TRO was entered without notice, without due process, and was strategically served on a holiday to maximize the impact on the Defendant. The TRO is causing, and will continue to cause, irreparable harm to Defendants if it is not immediately vacated or significantly narrowed.

Defendants require a hearing on this motion as soon as possible; they cannot wait until the TRO expires on July 13, 2026, as the TRO is presently causing a loss of subscribers and damage

to reputation and goodwill that cannot be restored.

## 1.0    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs filed this action under seal on May 28, 2026 (ECF No. 1), despite having actual knowledge of Defendants' allegedly infringing acts no later than February 25, 2026 (*id*. at ¶ 34).[1] This unexplained 3-month gap between notice and legal action makes their claimed urgency for not only a TRO, but an *ex parte* TRO without notice, suspect.  There was no basis to deprive Defendants of due process before shutting down their business.

Defendants will provide a more fulsome opposition to Plaintiffs' request for a preliminary injunction by the Court's deadline of July 9 at noon. They bring this motion on an emergency basis, however, because the Court must immediately vacate its TRO, or at least severely pare it down so that Defendants stop suffering irreparable harm.

The TRO is breathtaking in its scope. Plaintiffs identify, at most, 23 channels (per NagraStar) and per Plaintiffs' independent expert, 11 channels allegedly sourced from Plaintiffs' Sling transmissions. ECF No. 3 at 3–5; ECF No. 3-3 at ¶¶ 4–7; Chrissan Dec. ¶¶ 10–12. Assuming, *arguendo*, Plaintiffs are correct that Defendants violated the DMCA and ECPA as to these channels (and Defendants have arguments that they did not), this would mean a proper injunction would restrain the retransmission of **only** those channels or any other Sling channels. Part of the Court's injunction is limited this way. *See* ECF No. 7 at 5, ¶ (a) (enjoining Defendants from "receiving or assisting others in receiving Plaintiffs' programming without authorization by Plaintiffs") & ¶ (d) (enjoining Defendants from "intentionally disclosing or using Plaintiffs' channels knowing or having reason to know that they were obtained through interception").

The remainder of the TRO is not narrowed so reasonably. The injunction restrains Defendants from operating their websites "and operating, hosting, or otherwise supporting any website that advertises, promotes, offers, sells, or otherwise traffics in the CUE Service." *Id*. at ¶

---

[1] Plaintiffs claim to have sent a cease-and-desist letter to Defendants on February 25, 2026. However, Defendants never received this letter and did not have notice of Plaintiffs' claims until service on July 3, 2026.

(b). It also restrains Defendants from "manufacturing, offering to the public, selling, providing, or otherwise trafficking in the CUE Service . . . ." *Id*. at ¶ (c).

This effectively shuts down Defendants' business. They cannot provide *any* of their services to their customers. Weddell Dec. at ¶ 11. The CUE Service is funded entirely by user subscriptions, meaning Defendants no longer have a revenue stream; they are making $0 while the injunction is in place. *Id*. at ¶ 15. Meanwhile, they are still incurring normal expenses, and have 28 employees who will go without paychecks if they are unable to operate their 900+ other channels.

Defendants distribute programming far beyond what Plaintiffs' complain about. They provide content from approximately 1,000 channels, including a vast array of programming not available on any traditional cable channel. *Id*. at ¶ 7. The CUE service provides numerous podcasts and other content not broadcast through traditional means. *Id*. at ¶ 6. Many of these have explicitly political and religious programming. *Id*. at ¶ 7. These channels also include informational programming about healthcare, wellness, and drug addiction awareness. With only a few exceptions, *none* of these channels are available on cable or satellite channels. *Id*. at ¶ 7. This Court's injunction has completely cut off Defendants' ability to distribute this programming and has severely limited the ability of CUE's subscribers to access it. *Id*. at ¶ 12. While Plaintiffs speculate without evidence that Defendants lack a license to transmit the content on their channels, they are wrong. *Id*. at ¶ 4. This makes the TRO the broadest prior restraint that has ever been issued in the United States. Not only does it enjoin content that the Plaintiff sought to enjoin, but content the Plaintiff has no standing to complain about. It is as if the Court granted a prior restraint against the Las Vegas Review-Journal publishing a single article, but for good measure, enjoined the newspaper from publishing *anything* pending a further hearing. The destructive sweep here is beyond what the First Amendment, the relevant statute, and the due process clause can tolerate.

Furthermore, the injunction imposes a complete asset freeze on "any assets or property belonging to or under the management of Defendants, whether real or personal." ECF No. 7 at 6. Defendants are able to access funds to pay legal fees and for "other reasonable and necessary

business and personal expenses," but only "after reaching an agreement with Plaintiffs' counsel or by seeking leave from this Court." In other words, Defendant CUE must seek permission from this Court to pay contractors and employees, and Defendant Weddell must get permission from this Court before he can buy lunch, all based on Plaintiffs alleging a small fraction of CUE's programming violates the DMCA and ECPA.

## 2.0   LEGAL STANDARD

A preliminary injunction or temporary restraining order "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The movant bears the burden of establishing: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of injunctive relief; (3) that the balance of equities tips in their favor; and (4) there would be no disservice to the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[A] stronger showing of one element may offset a weaker showing of another." *Id*. at 1131–35.

Defendants' forthcoming opposition to the preliminary injunction motion will challenge Plaintiffs' arguments as to each of these elements for seeking preliminary injunctive relief. For purposes of this emergency Motion, however, Defendants will only address issues that separately require vacatur of the TRO on an emergency basis, because time is of the essence and a full development of all the issues here would delay a resolution.  Meanwhile, even **hours long delay** much less days is proving to be destructive to the legitimate business the TRO shut down.

## 3.0   ARGUMENT

### 3.1   This is an Emergency

Emergency motions are "confined to only the most limited circumstances." *Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1141 (D. Nev. 2015). L.R. 7-4(c) provides that, generally, emergency motions are proper "when the movant has shown (1) that it will be irreparably prejudiced if the Court resolves the motion pursuant to the normal briefing schedule and (2) that the movant is without fault in creating the crisis that requires emergency relief, or at the very least that the crisis occurred because of excusable neglect." *Id*. at 1142.

As explained in Section 1.0, *supra*, the Court's TRO poses an existential threat to Defendants' business. It completely shuts off their sole source of revenue and is already causing a loss of customers and damage to reputation and goodwill that Defendants will not be able to recover. Weddell Dec. at ¶ 16. And as explained in Section 3.2, *infra*, it is currently causing significant harm to both Defendants' First Amendment right to distribute expressive speech and their subscribers' First Amendment right to access such speech. *Any* restraint on speech for any duration constitutes irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *accord Associated Press v. U.S. Dist. Court,* 705 F.2d 1143, 1147 (9th Cir. 1983) (unconstitutional order in place for only 48 hours was "a total restraint on the public's first amendment right of access even though the restraint is limited in time").

This emergency is not one of Defendants' making. They did not receive notice of Plaintiffs' claims or the TRO until July 3, 2026, and Plaintiffs deliberately hid the existence of this suit from them until that time. *See* ECF No. 18. Defendants were blindsided by the TRO and asset freeze, and thus had to scramble to comply with the TRO and retain counsel to challenge it. Defendants have moved as quickly as possible to file this Motion. The very nature of how Plaintiffs did this should be enough to have the court take a second look. Had Plaintiffs at least given notice of the lawsuit, or the motion for a TRO, or even the issuance of the TRO in a normal way, we might not need emergency relief. But for what reason could the Defendants have not been notified? And what excuse is there to hold the existence of the TRO until late in the day on July 3, other than to use timing as an improper means of trying to exact an unearned advantage?

### 3.2     The Injunction is an Unconstitutional Prior Restraint

While Plaintiffs paint this case as a run-of-the-mill attempt to stop the theft of content (which they do not own, but are merely licensed to distribute), the injunction they sought and obtained is an affront to the First Amendment. The injunction completely shuts down every single aspect of the CUE service and Defendants' websites. ECF No. 7 at 5–6. While some of the TRO's provisions are limited to Plaintiffs' programming specifically (*id*. at (a) & (d)), its broadest and

Defendants' Emergency Motion to Vacate Temporary Restraining Order
Case No.: 2:26-cv-01623-GMN-EJY

most problematic restrictions are not (*id.* at (b) & (c)). They constitute a complete bar on providing Defendants' services, *i.e.*, distribution of creative works, political works, and religious works, to the public. The injunction is a prior restraint on First Amendment-protected speech, yet Plaintiffs made no attempt to inform the Court as to how the injunction could impact Defendants' First Amendment rights.

The First Amendment "embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943). It protects material disseminated over the internet as well as by older means. *Reno v. ACLU*, 521 U.S. 844, 868 (1997). "The right to receive publications is . . . a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them." *Lamont v. Postmaster General of U.S.*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring).

The TRO is a prior restraint, which is "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976). "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod,* 427 U.S. at 373; *Associated Press,* 705 F.2d at 1147 (unconstitutional order in place for only 48 hours was "a total restraint on the public's first amendment right of access even though the restraint is limited in time"). There is a robust First Amendment right to publish information—even illegal information—and equally robust barriers against any intrusion into that right. *See e.g., Fla. Star v. B. J. F.,* 491 U.S. 524 (1989); *Smith v. Daily Mail Pub. Co.,* 443 U.S. 97 (1979); *Okla. Pub. Co. v. Dist. Court of Okla.,* 430 U.S. 308 (1977); *Neb. Press Ass'n v. Stuart,* 427 U.S. 539 (1976); *Cox Broad. Corp. v. Cohn,* 420 U.S. 469 (1975); *Miami Herald v. Tornillo,* 418 U.S. 241 (1974); *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971); *N.Y. Times v. United States*, 403 U.S. 713 (1971) (the "Pentagon Papers" case); *N.Y. Times v. Sullivan,* 376 U.S. 254 (1964); *Grosjean v. Am. Press Co.,* 297 U.S. 233 (1936); *Near v. Minnesota,* 283 U.S. 697 (1931). The DMCA does not create a constitutional carve-out; 17 U.S.C. § 1203(b)(1) authorizes district courts to enter injunctions "on such terms as it deems reasonable to prevent or restrain a violation [of the DMCA's anti-circumvention provisions], **but in no event shall impose**

**a prior restraint on free speech or the press protected under the 1st amendment to the Constitution**" (emphasis added). Nevertheless, a prior restraint is precisely what the TRO has imposed. This is not authorized by the statute, the First Amendment, nor the Fourteenth Amendment.

Plaintiffs identify, at most, 23 channels (per NagraStar) and per Plaintiffs' independent expert, 11 channels allegedly sourced from Plaintiffs' Sling transmissions. ECF No. 3 at 3–5; Duval Dec. ¶¶ 4–7; Chrissan Dec. ¶¶ 10–12. Yet the TRO does not enjoin the retransmission of those specific channels. It shuts down CUE's entire business, which Plaintiffs themselves describe as offering "over 1,000+ live channels." ECF No. 16-1, Exh. 2. The injunction shuts down *all content* available through the CUE service, including content as to which Plaintiffs have offered no evidence, hold no rights, and assert no claim, along with CUE's websites, subscriber communications, and corporate existence. An injunction that suppresses 98% of a communications service that no party has even alleged to be unlawful is not an order "to prevent or restrain a violation." It is a prior restraint on protected distribution and speech that 17 U.S.C. § 1203(b)(1) expressly forbids, and it violates Rule 65(d)'s requirement that injunctive relief be narrowly tailored. In issuing its injunction, the Court did not address these other channels and their associated content, all of which Defendants have a First Amendment right to distribute *even if* we accept that Plaintiffs are likely to succeed on their claims. The First Amendment does not permit this. The TRO must be vacated, and any injunction the Court enters must be restricted only to the retransmission of Plaintiffs' channels.

### 3.3    The Injunction is Overbroad

It is an abuse of discretion to issue an overly broad injunction. *See L.A. Press Club v. Noem*, 171 F.4th 1179, 1190 (9th Cir. 2026), quoting *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024). An injunction "must be tailored to remedy the specific harm alleged." *L.A. Press Club*, 171 F.4th at 1190, quoting *Washington v. Trump*, 145 F.4th 1013, 1037-38 (9th Cir. 2025). The scope of an injunction must be "no broader than necessary to provide complete relief" to the plaintiff. *See Easyriders Freedom F.I.G.H.T v.*

*Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996), citing *Meinhold v. U.S. Dept. of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994). If a trial court enters an injunction that the defendant demonstrates is overly broad, the court may vacate it and fashion a narrower injunction that is not. *See L.A. Press Club*, 171 F.4th at 1191.

The TRO in place is vastly overbroad. It completely restrains operation of the CUE service, even regarding the hundreds of channels about which Plaintiffs do not complain. There has been no attempt made to narrow its scope only to the allegedly offending channels. If the Court feels that some form of injunction should stay in place pending the hearing on the preliminary injunction motion, any such injunction must be narrowed to the alleged violations of the DMCA and ECPA — the retransmission of Plaintiffs' identified channels and any circumvention of the Widevine DRM as applied to Plaintiffs' services.

**4.0    CONCLUSION**

For the foregoing reasons, the Court should hear this Motion on an emergency basis as soon as possible and either vacate the existing TRO in its entirety or limit its scope only to the retransmission of Sling channels identified in Plaintiffs' Complaint and motion for a TRO. The only harm that the Plaintiffs could possibly suffer by such relief would be to have to tolerate Defendants being able to defend themselves and deliver content that has nothing to do with Plaintiffs – in other words, nothing. If the Court declines, it will have burned down the house to roast the pig, and whatever ashes are left will be all that can show up to finally engage in some semblance of due process.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: July 8, 2026.                    Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC
/s/  Marc J. Randazza
Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

*Attorneys for Defendants David Weddell
and Communication Unites Everyone, Inc.*

Defendants' Emergency Motion to Vacate Temporary Restraining Order
Case No.: 2:26-cv-01623-GMN-EJY

**CERTIFICATE OF COMPLIANCE WITH L.R. 7-4(A)(3)**

I HEREBY CERTIFY that on July 8, 2026, I spoke to Counsel for the Plaintiffs and explained the nature of this motion and the exigencies involved, but they were not willing to authorize a modification of the TRO without a hearing.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza

Case No. 2:26-cv-01623-GMN-EJY

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 8, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza

Defendants' Emergency Motion to Vacate Temporary Restraining Order
Case No.: 2:26-cv-01623-GMN-EJY